STEPHANIA LUCY SANDS, Respondent, *v.* THE NEW YORK LIFE INSURANCE COMPANY, Appellant.

The rule of the law of nations which annuls contracts between the citizens of two States upon the breaking out of a war between the States, has no application to life insurance, unless the policy insures against death while the assured is in the military service of his country. It is only such commercial contracts made prior to the war as give aid and comfort to the enemy, or such as are forbidden by or are against the policy of the government, that are dissolved. It is the settled policy of government to impair, as little as possible, the private rights of citizens by national differences.

The payment of premiums upon a life policy, and the remedy in case the policy becomes due during the war, are simply suspended until peace is restored. No forfeiture will arise for the non-payment of the premiums during the war, provided they are promptly paid, with proper interest, on the return of peace. The condition in a policy of life insurance forfeiting the policy, in case of non-payment of premiums subsequently accruing thereon, is a condition subsequent, not precedent.*

---

* This case is distinguishable from that of *Howell* v. *The Knickerbocker Life Ins. Co.* (44 N. Y., 276). There the policy was for one year, with a proviso that it might be continued from time to time until the decease of the assured, provided he should duly pay, or cause to be paid, the premium. It was there held that payment was a condition precedent, and unless performed the policy was no longer in force, although performance was prevented by act of God.

Defendant had a general agent residing in Mobile at the time of the break-
ing out of the war of the rebellion; his authority to receive premiums
was recognized by it after the issuing of the president's proclamation
forbidding commercial intercourse.  Plaintiff, who held a life policy
issued by defendant upon the life of her husband, paid to such general
agent, in Confederate currency, the premium thereon which fell due
January 2d, 1862.  *Held,* that this was a valid and effectual payment.

(Argued December 18, 1872; decided December 24, 1872.)

APPEAL from order of the General Term of the Supreme
Court in the first judicial department, reversing judgment in
favor of defendant entered upon the report of a referee and
granting a new trial.   (Reported below, 59 Barb., 556.)

This action was brought by the plaintiff as assignee of a
policy of life insurance.

The defendant issued to James Sands, of Mobile, a life
policy for $5,000 on his life, dated January 28, 1850, in which
the annual premium was fixed at $160, payable on the 18th
of January in each year.

The annual premiums were paid to James M. Muldon, the
defendant's agent at Mobile, and were duly remitted by him
to the defendant, down to and including that which became
payable January 18, 1861.

On January 18, 1862, Sands paid to Muldon $160 in Con-
federate notes, which the latter accepted as cash, as and for
the premium on said policy which fell due on that day.

Sands died on July 12, 1862; due proofs of death were fur-
nished to the defendant August 11, 1866; they refused to
pay the amount insured.  The policy was duly assigned to
the plaintiff before suit.

Under and by virtue of the act of congress of July 13, 1861,
and the president's proclamation of August 16, 1861, all com-
mercial intercourse was prohibited between the citizens of
the United States and the inhabitants of the States in rebel-
lion.  Both Sands and Muldon resided in Alabama; the
former was not in any way connected with the rebel army or
engaged in active hostilities of any kind.

Defendant, by letter dated August 21, 1861, recognized the

authority of Muldon to receive premiums, and directed as to the disposition thereof. This authority was canceled some time after the receipt of the premium upon the policy in question.

The referee found that Sands and defendant became public enemies from and after August 16, 1861, and the further execution of the contract became and was unlawful, and no right accrued to plaintiff in consequence of the death of Sands. That by the war the authority of Muldon, as agent, was revoked, and the payment to him of the premium was not a payment to defendant, and ordered judgment for defendant, which was entered accordingly.

*Noah Davis* for the appellant. From August 16, 1861, plaintiff was a public enemy with whom all intercourse, commercial or otherwise, was unlawful. (*The Rapid*, 8 Cranch, 155; Wheaton's Law of Nations, 548; 1 Gallison, 295; *Prize Cases*, 2 Black, 673, 687; *Mrs. Alexander's Cotton*, 2 Wall., 419; *Billgery* v. *Branch*, 8 Am. Law Reg., No. 6, 334; *Woods* v. *Wilder*, 43 N. Y., 167, 168; *Bank of New Orleans* v. *Matthews*, Court of Appeals, March, 1872; *McStea* v. *Matthews*, Court of Appeals; *Robinson* v. *Mutual Ins. Co.*, 42 N. Y., 54; *Swinnerton* v. *Columbian Ins. Co.*, 37 id., 174; *In re William Bagaley*, 5 Wallace, 377; *Hanger* v. *Abbott*, 6 id., 535; *United States* v. *Grossmayer*, 9 id., 75.) War annuls and makes unlawful all insurances upon enemies' property. 1 Duer's M. Ins., 473; 1 Phill. Ins., § 223; *Furtado* v. *Rogers*, 3 Bos. & Pull., 191; *Gamba* v. *Le Mesurier*, 4 East, 407; *Brandon* v. *Curling*, id., 410; *Kellner* v. *Le Mesurier*, id., 396; *Oddin* v. *Penn. Ins. Co.*, 2 Wash. C. C. R., 321; *Gray* v. *Lewis*, 3 id., 280; *Leathers* v. *Com. Ins. Co.*, 2 Bush, 298; Bunyan on Life Insurance, Law Library, vol. 49, side page 19; *Flint* v. *Waters*, 15 East., 260; *Harman* v. *Kingston*, 3 Campbell, 153; *Potts* v. *Bell*, 8 Term Reports, 548; *Manhattan Life Ins. Co.* v. *Warwick*, 2 Bigelow, Lf. & Ac. R., 193.) The contract sued on was an executory contract, and its continued execution during the war

would have been illegal. (1 Duer on Ins., 478; *Hanger* v. *Abbott*, 6 Wall., 532; *Greenfield* v. *Mass. Mut. Life Ins. Co.*, 47 N. Y., 436; 1 Bigelow L. & Ac. R., 199; *Roberts* v. *New England Mut. Life Ins. Co.*, id., 634; *Woods et al.* v. *Wilder et al.*, 43 N. Y., 167; Wheaton's Int. Law, § 317; 1 Kent Com., 67; Story on Cont., § 608; *White* v. *Bromley*, 2 How., 249; *Scholefield* v. *Eichelberger*, 7 Peters, 586; *United States* v. *Grossmayer*, 9 Wall., 75.) The war operated *per se* as a revocation of the authority of defendant's agent at Mobile. (*Hanger* v. *Abbott*, 6 Wall., 535; Story on Partnership, § 316; 5 Wall., 406; 2 Brush., 298; *Wood et al.* v. *Wilder et al.*, 43 N. Y., *supra;* Story on Agency, §§ 462, 481, 482, 499.) The payment of the annual premium was a condition precedent to any obligation on the part of defendant. (*Howell* v. *Knickerbocker Life Ins. Co.*, 44 N. Y., 276; *Oakley* v. *Morton*, 11 id., 25; *Catlin* v. *Tobias*, 26 id., 47; *Harmony* v. *Bingham*, 12 id., 99; *Tomkins* v. *Dudley*, 25 id., 272; *Holdipp* v. *Otway*, 2 Sand. R., 106; *Wood* v. *Nasby*, 6 Term R., 710; *Oldman* v. *Bewick and another*, 1 Henry Blackstone, 577, note; *Routledge* v. *Burrell*, 1 id., 254; *French* v. *Campbell*, 2 id., 178; *Scott* v. *Tyler*, 2 Bro. Ch. C., 455; *Popham* v. *Banfield*, 1 Vern., 83; *Bertrie* v. *Ld. Falkland*, 3 Ch. C., 129; 2 Vern., 333; *Wells* v. *Smith*, 2 Edw. Ch., 78; *Moore* v. *West. F. Ins. Co.*, 12 Wend., 452; *Owens* v. *Farmers' Joint Stock Co.*, 57 Barb., 518; 2 Dallas, 317; *Dermott* v. *Jones*, 2 Wall., 8; *Nightingale* v. *State Mut. Ins. Co.*, 5 R. I., 38; *Phillips* v. *Eastwood*, L. & G., 291; *Mutual Benefit Life Ins. Co.* v. *Ruse*, 1 Bigelow, 83; *Robert* v. *The New England Mut. Life Ins. Co.*, id., 634; 44 N. Y., 276; *Catoir* v. *Am. L. and T. Co.*, 4 Vroom, 487; *O'Reilly* v. *The Mut. Life Ins. Co. of New York*, Superior Court, November 22, 1868, per Chief Justice ROBERTSON; *Cohens* v. *The Mut. Life Ins. Co.*, same court, General Term, 1868; *Koelgis* v. *The Guardian Life Ins. Co.*, 2 Lansing, 480; *Taylor* v. *The British Commercial Life Ins. Co.*, which is referred to in the same case.)

*G. De Forest Lord* for the respondent. The payment of the premium in Confederate currency was a valid payment. (*Robinson* v. *International Life Ass. So.*, 42 N. Y., 54 [1870]; *Thorington* v. *Smith*, 8 Wall., 1 [1868]; *Pollglass* v. *Oliver*, 2 Cr. & J., 15 [1831]. A contract made prior to a war is a valid existing legal obligation when the war breaks out, where it does not involve inter-territorial intercourse, or lend aid or comfort to the enemy. (*Bell* v. *Chapman*, 10 John., 183; *Ex parte Bousmaker*, 13 Ves., 702.) This rule does not apply to a contract of insurance. (*Buchanan* v. *Curry*, 19 John., 137; *Ward* v. *Smith*, 7 Wall., 447 [1868]; *Manhattan Life Ins. Co.* v. *Warwick*, 20 Grattan, 614; *Hamilton* v. *Mut. Life Ins. Co.*, U. S. Circuit Court, southern district N. Y., January, 1872; 9 Blatchf., 234; *Ruse* v. *Mutual Benefit Life Ins. Co.*, 26 Barb., 556; *Furtado* v. *Rogers*, 3 Bos. & Pull., 193; *Kellner* v. *Le Mesurier*, 4 East, 396; *Gamba* v. *Mesurier*, id., 407; *Brandon* v. *Curling*, id., 410.) The courts are inclined to uphold pre-existing contracts, so far as can be done, without lending aid or comfort to active enemies, or without conflicting with recognized belligerent rights; and in no case *needlessly* to declare them void. (*Clarke* v. *Morey*, 10 Johns., 69; *Bell* v. *Chapman*, id., 183; *Brodwell* v. *Weeks*, 13 id., 1, opinion of YATES, J.; *Clopton* v. *New York Life Ins. Co.*, 7 Bush, 179; *Manhattan Life Ins. Co.* v. *Warwick*, 20 Gratt., 614; *Scholefield* v. *Eichelberger*, 7 Peters, 586.) The war did not revoke Muldon's agency. (*Denniston* v. *Imbrie*, 3 Wash. C. C., 403; *Ward* v. *Smith*, 7 Wall., 447; *Conn.* v. *Penn.*, 1 Pet. C. C. R., 524; *United States* v. *Grossmayer*, 9 Wall., 75; *Robinson* v. *International Life Ass. So.*, 42 N. Y., 62.)

PECKHAM, J. Action to recover the amount of a policy of insurance issued by defendant to the husband of the plaintiff on the 28th of January, 1850, then a resident of Mobile, in Alabama; whereby, in consideration of $160 then paid, and of the annual payment thereafter of a like sum during the continuance of the policy, the defendant agreed to insure him

in the sum of $5,000 "for the term of his natural life."
Sands died at Mobile in July, 1862.

It is admitted that all premiums were paid on the policy
up to January, 1862; and it is proved and found that the
premium due in January, 1862, was paid to one Muldon, the
agent of defendant, at Mobile, appointed prior to our civil
war, and through whom this policy was issued; and it was
paid in Confederate treasury notes, then, substantially, the
only currency of the so-called Confederate States for the gene-
ral business of those States; and, although not made a legal
tender for the payment of debts, it was so used, and was then
very generally received at par in payment of debts and for
the purchase of property, although it was at a discount for
gold of about twenty per cent. This currency was received
by Muldon, the general agent of the defendant, as money.

The defendant now objects to the payment of the insurance
upon various grounds. Its counsel insist that the war made
the contract void; that the contract was executory, to be
renewed each year by payment of the premium or it became
void; and hence such contract became utterly void by the
war; that it was void as requiring commercial intercourse
between the States at war; that, at any rate, the agency of
Muldon was avoided by the war. Hence, that he had no
authority to receive payment of the premium in January,
1862; and certainly not in Confederate notes.

It is certainly true that all contracts with citizens of Con-
federate States are not made void by the war.

It is against sound principle, and at war with the lights of
the age, that the debts of individuals should be impaired by
national differences; debts, be it understood, that existed
by virtue of contracts made prior to the war. (*Clarke* v.
*Morey*, 10 J. R., 73.)

This contract of the parties I do not think was nullified by
the war. What was it? As presented in the complaint and
found by the referee, it is a contract of insurance by
defendant for the life of the insured for the consideration of
so much money received, and the annual payment of $160

during the continuance of the policy. It was a valid policy "for the life of the insured," to become void by the omission to pay the agreed annuity. In principle, I do not see why it is not like a lease or grant of land in fee, reserving rent, to become void if the rent be not paid, if the condition subsequent be not complied with. I do not say that it would bar the plaintiff's recovery if the contract were as the defendant insists it is. It is enough to say that such is not this contract. The agreement is to insure for the life of the assured. Subsequent failure to pay the annuity when due defeats the policy. It is a condition subsequent, not precedent.

Is this contract criminal or illegal, as contravening the policy of the government?

If it be, if it give aid and comfort to the enemy, it is nullified by the war.

It is insisted that it is void because it intends and implies commercial intercourse between citizens of hostile States; "locomotive" intercourse, as it is termed; and, if it does, it is annulled by the war. (*Woods* v. *Wilder*, 43 N. Y., 167; *Griswold* v. *Waddington*, 16 J. R., 438; *Clarke* v. *Morey*, 10 id., 69; *United States* v. *Grossmayer*, 9 Wallace, 75.)

Clearly it is not law, nor do these or any recognized authorities intend to hold that a valid debt by note, bond or contract, existing when the war began, against a citizen of a Confederate State in favor of a citizen of a northern State was nullified by the war. The debt is suspended until peace returns. It is not destroyed. (*Buchanan* v. *Curry*, 19 J. R., 137; *Bell* v. *Chapman*, 10 id., 183; *Clarke* v. *Morey*, id., 69; *Ex parte Boussmaker*, 13 Vesey, 702; *Semmes* v. *Hart. Ins. Co.*, 13 Wallace, 158; *Prize Cases*, 2 Black, 687, per NELSON, J.; *The Protector*, 9 Wal., 687; *United States* v. *Wiley*, 11 id., 508.)

Nor would it make the least difference as to the validity of the claim by contract that it was for the purchase of a farm of a citizen in a Confederate State, upon which contract large payments had been made and one or two yet remained unpaid, even though it were expressly stipulated that if the

after payments were not made when due the contract should be void, and the purchaser should forfeit, as liquidated damages, all payments theretofore made thereon.

The war would suspend such a contract until peace. (*Semmes* v. *Hart. Fire Ins. Co., supra,* and other cases.)

There is no principle upon which war could annul it. This is so, irrespective of the question of real or personal estate involved. Such a contract affords no aid or comfort to the enemy.

It requires no "locomotive" intercourse, unless such intercourse be required by a bond or note past due.

The principle involved in such a contract would be the same if it contained no provision as to its becoming void, but only provided for the execution of a deed upon the payments being made as therein provided.

Yet such a contract would be nullified by the war, according to some text-books and by the *dicta* of some judges. The payments not being all made when the war commenced, there was no vested right to a deed. Some acts, therefore, remained to be done "by or between the parties during the war." Hence, they say it was abrogated by the war. One writer says it is "probably" void "as to all acts to be performed during the war." (1 Duer on Ins., 478.) This was assuming to lay down a general rule after discussing *Griswold* v. *Waddington* (16 J. R, 438). Some *dicta* of judges say that all *contracts* are "annulled by the war."

Authorities sustain neither position. It is really of no moment whatever whether these payments were optional with or obligatory upon the assured, as to this question. The payments were all to be made by virtue of and under a contract made before the war. Such a contract could not be nullified by the war, unless it was hostile to the policy of the government, at war with its interests; *dicta* of judges should always be construed with reference to the case then before the court.

The general rule undoubtedly is, that it is only commercial contracts, such as give aid and comfort to the enemy, or are forbidden by or are against the policy of the government, that

are void as to all acts to be done during the war, though the contracts were made before the war.

Contracts for the insurance of the enemy's property, of affreightment and of commercial copartnership, are avoided thereafter by the breaking out of the war, because they are inconsistent with the war, inconsistent with the interests and policy of government, whose purpose is, by the war, to destroy and cripple the enemy's property and commerce. (*Furtado* v. *Rodgers*, 3 Bos. & Pul., 191; *Killner* v. *Le Mesurier*, 4 East, 395, and the two cases following; *Kershaw* v. *Kelsey*, 100 Mass., 561.)

This last case, in an able review of the authorities, holds a lease made by a citizen of Massachusetts in a southern State, entered into there after the war began, to be valid, and that the lessee was liable for the unpaid rent. (*Clarke* v. *Morey*, *supra.*)

The rule that makes such contracts as before alluded to void, has no application to life insurance.

This contemplates no commercial intercourse, no aid to the enemy's commerce, no aid or comfort to the enemy, no violation of governmental policy. It is idle to say that it fosters or implies commercial intercourse.

That money falls due annually to the defendant for the premiums, during the war, does not make the contract void any more than would installments of debt falling due upon a bond or note, given before the war, render the bond or note void. That is not commerce or commercial intercourse.

The law does not presume that an honest debt due to an alien enemy will be paid over to him during the war, even though paid to his resident agent. (*Buchanan* v. *Curry*, 19 J. R., 137; *Denniston* v. *Imbrie*, 3 Wash. C. C., 403; *Ward* v. *Smith*, 7 Wall., 447.)

Nor is it made void by the fact that the policy itself might become payable during the war. It would be no more void for that reason than if a note or bond given before the war should so fall due. The right to receive or collect it by the

representatives of the assured is suspended until peace is restored.

Why is not the note or the bond given before the war made void by the war? Simply because the interests of government do not require it. Their validity is not hostile to the government. Because it is the settled policy of government to impair, as little as possible, the private rights of citizens by national differences. (*Clarke* v. *Morey,* 10 J. R., 69; *Bradwell* v. *Weeks,* 3 J. R., 1; 7 Peters, 586.) That this contract of insurance cannot possibly operate in hostility to the government or its policy in the war, I think is entirely plain.

If it insured the enemy against death in the enemy's army, it would of course be void; because then, although it gave to the assured no benefit to himself, yet it gave it to his family by his death. But it insured against no such loss. An exception against such a loss would be implied in the contract as being illegal, but it is plainly expressed here. The policy provides: "If he should enter into any military or naval service whatever, or if he should die in the known violation of any law of the United States, the said policy shall be null and void."

It is insisted that men, as well money, are necessary to the war. True; but this insurance is a direct reward to keep men out of the war. If they go in, the policy is instantly void. It may be regarded, therefore, so far as it operates at all, as a direct premium to prevent the filling up of the enemy's army. Again, it is not the purpose or policy of government to destroy mere non-combatants in the enemy's country—civilians, not belonging to the army. It is the rule of all civilized warfare to protect such persons—to shield them from injury. Then why should this insurance be condemned, as to its ultimate object?

Again, it would not be claimed that an annuity purchased from an enemy before the war, and paid for, was made void by the war, though payable any number of times during the year. Yet the difference in principle is not apparent between that and the case at bar. The only difference in form is,

that there the annuitant paid in full for the annuity, and receives back his annuity in installments. Here he pays by annual installments, and receives it back in gross by his representatives.

If it be unlawful to pay the annuity during the war, by inter-territorial intercourse, then it must not be paid in that way. But there is no pretence of avoiding such an annuity by the war, because it might, by possibility, like any other debt, be improperly paid. (See *Buchanan* v. *Curry*, and other cases, *supra*.) Well considered cases hold that payment of these annual installments is not like the cases made void by war of affreightment and commercial copartnership, it being a single act, or an annual act, instead of a continued business. (*Clopton* v. *N. Y. L. Ins. Co.*, 7 Bush. [Ky.], 199; *Hamilton* v. *Mut. L. Ins. Co.*, by Justice BLATCHFORD, in southern district; *Manhattan L. Ins. Co.* v. *Warwick*, 20 Grat., 614.) This is reasonable. But the stronger ground, in my opinion, is, that the contract having been made before the war, and it being of the character before described, its fulfillment afterward is not against the purpose or policy of the war. Cases of marine insurance, of insurance against capture by the enemy on the sea, and contracts of affreightment have no analogy to this. This contract therefore was neither illegal nor criminal.

It is urged that the last premium was not paid, and hence the policy became void. If it were not paid I do not think the consequences claimed would follow. The war suspended this contract, and no forfeiture for non-payment would arise while the war lasted, provided the premiums, with proper interest, were promptly paid on the return of peace.

It is clear that this state of things was a surprise to both parties—they made no provision for a war. If they had, it is equally clear that they would never have provided for such an inequitable result as the defendant now claims.

It is argued that these payments, at the time required, are a condition precedent to the right to the insurance, which nothing can excuse—not even an act of Providence can dis-

pense with. Without stopping to question this position, it is clear that war in this respect, then, can accomplish what cannot be done otherwise. War extends the statute of limitations (*The Protector*, 9 Wall., 617; *Hanger v. Abbott*, 6 id., 532) not only against citizens, but against the United States. (*U. S. v. Wiley*, 11 Wall., 508.)

It is equally a condition precedent to a right to recover on a policy, that the action shall be brought within the time specified in the policy. The parties have an undoubted right, by contract, to fix a short statute of limitations, obligatory in the given case. Yet war annuls that limitation, if necessary, and the action may be brought wholly irrespective of that provision of the policy. So held in *Semmes v. Hart. Ins. Co.* (13 Wall., 158), where that was the sole point of the case. If such be its effect upon that provision, there is no reason why it shall not save from forfeiture this condition of payment of the premium when due. It is the fault of neither party that it is not paid, and war suspends contracts like this, but does not destroy them.

Nor is there any injustice to the defendant. Of course there is none in the present case, where the assured had confessedly paid for twelve years and died in six months thereafter; in fact, had paid the last premium. But justice is generally done by requiring the payments promptly after the war ceases, with proper interest. The companies do no more than invest their money upon interest. If some fail thus to pay, of course they lose all they have paid, which cannot injure the company.

Symptoms of war are usually quite plainly visible before it comes, and insurers may observe and cease to insure, so that generally a reasonable advance in premiums is made by the assured before the war comes. Cases may possibly occur where the company might lose by the failure to pay by the assured when peace is restored. In ordinary business they would be rare. But the great injustice would be generally to the assured by this forfeiture. It is sought to compare it to a commercial copartnership, to which it has no analogy.

But even such a partnership is avoided only as to the future. Past transactions and liabilities are valid. But here, if this contract be made void, all past transactions are made void. The assured would lose all his payments upon the grounds claimed by the defence. But no such question arises here as the premium was paid.

The defendant had a general agent in Mobile when the payment was made, as it lawfully might, to receive the demands due the company. That it had an agent, in fact, in January, 1862, when the premium was paid, is proved and found by the referee. His continuance after the president's proclamation was expressly recognized by the defendant by letter of the 21st August, 1861. That he was lawfully defendant's agent is settled. (See cases before cited; *Buchanan* v. *Curry*, 19 J. R., 137, where the point was involved; *Denniston* v. *Imbrie*, 3 Wash. C. C., 403; *Ward* v. *Smith*, 7 Wall., 447; *Conn.* v. *Penn.*, 1 Pet. C. C., 524; *United States* v. *Grossmayer*, 9 Wall., 72; *Robinson* v. *Inter. Life Ins. Co.*, 42 N. Y., 54; *Kershaw* v. *Kelsey*, 100 Mass., 561.)

It is urged, as a ground of injustice to defendant, that if the money were paid to defendant's agent at Mobile, it might and would be confiscated to the enemy's government. True, so might any debt due from an alien enemy, but that reason would not invalidate the debt. That the payment in Confederate notes was a valid payment is decided. (*Robinson* v. *Inter. Life Ins. Co.*, *supra* ; *Polglass* v. *Oliver*, 2 Cromp. & Jer., 151.) That a contract like this was not avoided by the war is adjudged in principle in the cases cited of *Buchanan* v. *Curry* (19 J. R., 137), which has never been overruled. And the following authorities are in point, to sustain this action : *Clopton* v. *N. Y. Life Ins. Co.* (7 Bush. [Ky.], 179); *Hamilton* v. *M. L. Ins. Co.* (9 Blatch., 234); *Manhattan Life Ins. Co.* v. *Warwick* (20 Gratt., 626). And I am not aware of any case to the contrary.

The order should be affirmed and judgment absolute rendered against defendant.

All concur except GROVER, J., not voting, and RAPALLO, J., not sitting.

Judgment accordingly.