LESTER v. UNION MANUFACTURING COMPANY, appellants.

*Payment in Confederate money — Duress.*

Defendant, being indebted to the plaintiff, entered into an arrangement with him, in 1863, in Richmond, Va., whereby defendant agreed to pay plaintiff a certain sum in satisfaction of the claim, and thereupon defendant gave plaintiff a check on a Richmond bank, which plaintiff presented and which was paid in Confederate currency. *Held*, that plaintiff could not again recover the amount agreed to be paid, upon the ground that he had been induced to take Confederate money from fear of being compelled to remain in the Confederacy if he did not do so.

APPEAL from a judgment entered upon the verdict of a jury in favor of plaintiff and from an order denying a new trial.

The action was brought by John H. Lester against the Union Manufacturing Company. The complaint in this action, as finally amended, sets up, that in December, 1863, at Richmond, Virginia, the plaintiff sold and delivered to the defendant, certain machinery and other personal property, of the value of $82,000, for which defendant agreed to pay plaintiff $82,000 of its stock; that said stock was never paid or delivered; that thereafter plaintiff had a settlement and accounting with defendant, when it was agreed that defendant should pay to plaintiff $50,000 in cash, instead of the said stock; that after this agreement plaintiff executed a bill of sale (exhibit A) of the property to defendant; that this bill of sale was forced upon the plaintiff by fraud and intimidation, and plaintiff was forced by similar means to take Confederate money in payment of the consideration of the bill of sale. Judgment is asked for the $50,000, and interest. The material facts appear in the opinion.

*Raymond & Coursen*, for appellant.

*E. Pierrepont* and *T. C. Campbell*, for respondent.

DONOHUE, J. This suit, as the last amendment of the complaint shows, is brought to recover on an agreement entered into as a compromise of the value claimed for certain articles sold the defendants. That complaint alleges that the plaintiff had sold the property for $82,000, payable as stated; that thereafter, on a settlement and accounting, defendant agreed to pay plaintiff $50,000 in cash; that,

after that accounting, the agreement "A" was, by force and fraud, obtained from plaintiff, and that, by force and fraud, he was compelled to take Confederate money for the amount, and has never been paid his $50,000.

While there is conflict on some points, as there will be in all cases, these are the main points in the case, on which there is no dispute. It is clear that there was a suit pending in Richmond, where all these transactions took place, in favor of plaintiff against defendants for the purchase-money of this property, the plaintiff and defendant widely differing in their statements. That, about the time of the sale sued on, the plaintiff, if he is to be believed, was afraid that he would be drafted into the Confederate service. That, in that state of the facts, the arrangements, all made at the same time and under the same state of facts, whatever they were, of the sale and mode of payment, were entered into. The plaintiff himself distinctly testifies: "He said I could take my choice, either execute that contract, or I would be compelled to remain there." Again: "He said, if I attempted to leave without executing the contract, receiving the check and drawing Confederate money, I would not be permitted to leave the Confederacy." His whole evidence is clear that the whole transaction, from agreement of settlement to how it was to be paid, was one.

The plaintiff now seeks to offer the contract on which he sues, and which he puts in evidence as his case, and disaffirm the payment.

In this I think the plaintiff is in error, and the learned judge, when he rested, should have dismissed his complaint. He cannot affirm in part and avoid in part the one transaction.

But supposing he could affirm the sale, and disaffirm the payment, if in law the payment is not good, how does he then stand?

In considering this question it is necessary to take into account the place and time in which the parties were acting, and the situation is too well known to need repetition. What was then the currency, and in what did he expect to be paid, and what was a payment?

*First.* If nothing had been said, what did he expect? He is asked: Q. What were checks payable in at that time in Richmond? A. I think they were all payable in Confederate bills. Q. Do you not know that was the case? A. Yes, sir; unless they were drawn otherwise.

The check was handed to him, and he further testifies he has no doubt that it was so payable, and he expressly testifies he got what he expected — Confederate money. It is hardly worth while to follow the evidence in the case to show that the debt created by the contract was payable in Confederate money, and such would be a good payment. *United States* v. *Huckabee,* 16 Wall. 414; *Sands* v. *N. Y. Life Ins. Co.,* 50 N. Y. 638, and *Fabbri* v. *Kalbfleisch,* 52 id. 31, seem to be conclusive on this point.

This being the state of affairs at the time and place of the payment, how can the plaintiff disaffirm such a payment on the ground that it was forced on him ? A very careful examination has not shown me any case or principle in which it is announced that the coercing or compelling a man to take payment of his debt, when due, is open to disaffirmance, and that the debtor can be compelled to pay again.

It would be useless to cite authorities to show that on such a tender, if the plaintiff had not accepted it and the defendant had kept it good, and had the money which he then tendered now to hand over, the plaintiff could not recover. As the plaintiff has the identical money, the tender, if viewed in the light only of a tender, is sufficient to defeat this claim.

But was there such a duress here as that the plaintiff may disaffirm either the contract or the payment, supposing it to be assumed by the plaintiff's proof, that he wanted to get out of the Confederacy, and was afraid that if he did not settle this he could not? It does not seem to me there is any evidence that the defendants or their servants told him any falsehood or made any misrepresentations to him about the facts ; and there results only this, that as matters existed at that time in Richmond he had, not by any coercion these parties could use, but by the disturbed state of affairs, to settle to avoid, not the trouble the defendants might give him, but what others might do if he was found there. *United States* v. *Huckabee,* 16 Wall. 414.

Another equally fatal ground seems to be against the plaintiff. He has kept and retained what he received for these goods, and for aught that appears, he or his family have used it and yet expect to be able to obtain the money here.

The court, on the trial, when asked, should have dismissed the complaint.

The judgment should be reversed and a new trial ordered ; costs to abide the event.

*Judgment reversed and new trial ordered.*