LEON KANNENGIESSER, Appellant, v. HENRI ISRAELOWITZ, Respondent.

(Supreme Court, Appellate Term, First Department, May, 1919.)

Contracts — agreement between alien residents to buy foreign exchange legal.

> An alien enemy who resides in this country may enter into contracts and sue like a citizen.
>
> An agreement by which an alien resident here agreed to buy from another alien resident engaged in the business of buying and selling foreign exchange in the city of New York 5,000 marks, German money, is legal though the time agreed upon for performance was after the declaration of war between this country and Germany.

APPEAL by plaintiff from a judgment of the City Court of the city of New York, rendered in favor of the defendant.

Saul H. Immergluck (Alfred B. Nathan, of counsel), for appellant.

William Jasie (Herman Joseph and Charles Goldzier, of counsel), for respondent.

DELEHANTY, J.   The action is upon a guaranty and is based upon two causes of action.   Upon the trial the conceded facts as alleged in the complaint were that one Adolph Israelowitz, engaged in the business of buying and selling foreign exchange in the city of New York, on January 8, 1917, entered into an agreement with plaintiff whereby the latter agreed to buy from said Israelowitz 5,000 marks, German money, to be delivered at the city of New York on July 23, 1917, and paid on account thereof $660; the vendor

having failed to perform in accordance with the terms of the contract, a further agreement was entered into on August 13, 1917, extending time of performance for a further period of four weeks in default whereof defendant agreed to return to plaintiff the said amount previously advanced. The second cause of action is of a similar nature, the contract there having been made on January 24, 1917, the amount involved being the same as stated in the prior contract. It is upon this guaranty that the action was instituted.

Pending the time of the making and the agreed performance of the contracts, to wit, on April 6, 1917, war was declared between this country and the German empire. The only question presented for the trial court's determination was as to the legality of the contracts. Decision was rendered in favor of defendant and from the judgment entered thereon this appeal is prosecuted. The learned counsel for defendant neither here nor in the court below based his contention of the invalidity of the contract of guaranty upon any act of the Congress of the United States or upon any proclamation of the president thereof prohibiting commercial intercourse with an alien enemy, but relied solely upon the ground that its object was to further transactions which are against the interests of the United States in the war with Germany and that upon the principles of the common law it is void as against public policy.

At the outset it must be borne in mind that at all times mentioned herein the parties involved in the transaction in suit were alien residents of this country engaged in business and residing in the city of New York. The recognized rule of the law of nations and the common law undoubtedly is, as was said in *Sands* v. *New York Life Ins. Co.*, 50 N. Y. 626, 633, '' that it is only commercial contracts, such as give

aid and comfort to the enemy, or are forbidden by or are against the policy of the government, that are void as to all acts to be done during the war, though the contracts were made before the war." It is " The trading or transmission of property or money which is prohibited by international law is from or to one of the countries at war." *Briggs* v. *United States,* 143 U. S. 346; *Kershaw* v. *Kelsey,* 100 Mass. 564, 573. Was it therefore, under the rule quoted, illegal for the parties herein to execute their agreement which provided for the purchase and sale of money of an alien enemy, to wit, the German empire? I think not. Surely there was nothing in the contract as to where the vendor was to procure the marks nor was there anything before the court to show that the German money in question could not have been obtained in this country at the time stipulated for its delivery. The reasoning of the learned trial court in view of this situation that the vendor was free to obtain the money from Germany and the presumption is that directly or indirectly it was to be procured therefrom is based upon a false hypothesis, namely, that the vendor intended to do an illegal act. The presumption of law is to the contrary, viz., that a person intends to act legally. Illegality is never presumed. *Richards* v. *Wiener Co.,* 207 N. Y. 65. Our decision in the instant case may well rest on the authority of *Briggs* v. *United States,* 143 U. S. 346, which was an action brought upon a contract made during the Civil War by two citizens of the United States, residing in loyal states, for the sale of cotton growing on a plantation within one of the insurgent states. In holding this contract valid the court, at page 352, says: " If residents of the enemy's country may contract for property situated within it, there would seem

to be no objection to similar transactions by persons residing outside of the Confederate lines and adhering to the national government, so long as no intercourse or connection is kept up with the inhabitants of the enemy's country. As stated in the case from which we have cited (*Conrad* v. *Waples,* 96 U. S. 279), it was commercial intercourse and correspondence between citizens of one belligerent and the other, and the engagement in traffic between them, leading to the transmission of money or property from one belligerent country to the other, which was forbidden. There was, therefore, nothing in the sale of the cotton on the plantations, or of cotton to be raised thereon, *there being no agreement respecting its movement across the border of the contending sections,* which brought the transaction within the prohibitions of any rule of international law or the proclamations of the President of the United States in 1861." Italics mine. The conclusion drawn by the learned justice below that because commercial intercourse between citizens of belligerent countries is thus prohibited in time of war it should not be tolerated between resident aliens as it tends to aid and comfort an enemy is contrary to the weight of judicial authority. In *Kershaw* v. *Kelsey,* 100 Mass. 564, 573, cited with approval in *Briggs* v. *United States, supra,* the court said: " The trading or transmission of property or money which is prohibited by international law is from or to one of the countries at war. An alien enemy residing in this country may contract and sue like a citizen. When a creditor, although a subject of the enemy, remains in the country of the debtor, or has a known agent there authorized to receive the amount of the debt, throughout the war, payment there to such creditor or his agent can in no respect be construed into a violation of the duties imposed by a state upon the debtor; it is not

made to an enemy, in contemplation of international or municipal law; *and it is no objection that the agent may possibly remit the money to his principal in the enemy's country; if he should do so, the offense would be imputable to him, and not to the person paying him the money.*" Italics mine. I conclude, therefore, that the judgment appealed from should be reversed, with costs, and judgment absolute granted for plaintiff in accordance with the prayer of the complaint, with costs.

GUY and BIJUR, JJ., concur.

Judgment reversed, with costs, and judgment absolute granted plaintiff, with costs.