GUSTAVE NEUMOND et al., as Administrators of the Estate of KARL NEUMOND, Deceased, Respondents, *v.* FARMERS FEED COMPANY OF NEW YORK, Appellant.

Contract — effect of war upon existing contract between belligerents — action to recover on contract between New York corporation and citizens of Germany for term expiring April 15, 1918 — contract not revived at close of war where term of plaintiff's obligations had expired — inequitable to compel defendant to make stipulated payments — failure to give notice of intention to terminate contract not material where there is complete failure of consideration.

1. The effect of war upon an existing contract between belligerents will vary with the nature of the obligation that is yet to be fulfilled. If the contract has been fully executed by the enemy before the outbreak of hostilities, if all that is left is a unilateral obligation for the payment of a debt, the obligation is suspended. The citizen must pay his debt when the war is at an end. On the other hand, if the contract is still executory at the beginning of the war, if there are mutual obligations that are yet to be fulfilled, the contract will be terminated when the essential purpose of the parties would be thwarted by delay, or the business efficacy or value of their bargain materially impaired.

2. A contract entered into between plaintiffs' intestate and another, citizens of Germany and copartners, and defendant, a New York corporation, by the terms of which the partnership gave defendant a conditional option and agreed not to buy grains in a designated territory during the term of the contract, which was to expire April 15, 1918, in consideration of which defendant agreed to pay designated amounts semi-annually and not to buy grains in other designated territory during the same term, fell with the outbreak of war between Germany and the United States on April 6, 1917, and was not revived at the close of the war. An action, therefore, to recover payments falling due thereunder cannot be maintained. The obligations of the contract on both sides were suspended during the period of the war. At the close of the war the plaintiffs' obligations had expired by their terms. Revival of the obligations of the contract could not create new contractual rights. A covenant on the part of the plaintiffs to restrict their business and to sell its good will and trade-mark during a limited period of time might not be extended without a new

contract of the parties. The stipulated consideration, therefore, failed and it would be inequitable to compel defendant to make the agreed payments.

3. The circumstance that defendant failed to give notice of intention to terminate the obligations of the contract is to be considered in weighing the conflicting equities but is of no substance when suspension of the contractual relations itself results in complete failure of consideration.

*Neumond* v. *Farmers Feed Co.*, 215 App. Div. 679, reversed.

(Argued September 30, 1926; decided December 31, 1926.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 7, 1925, modifying and affirming as modified a judgment in favor of plaintiff entered upon a verdict directed by the court.

*William S. Gordon* and *Joseph C. Slaughter* for appellant. The contract was executory. It expired by its terms April 15, 1918. During the war the firm of plaintiffs' intestate was under a legal disability to perform the contract. The contract was terminated because it became impossible of performance by operation of law and by act of the government. ( *U. S.* v. *Dietrich*, 126 Fed. Rep, 671; *Heinie* v. *Meyer*, 61 N. Y. 171; *Jones* v. *Judd*, 4 N. Y. 411; *Allanwilde* v. *Vacuum Oil Co.*, 248 U. S. 377; *Metropolitan Water Board* v. *Dick, Kerr & Co., Ltd.*, App. Cas. [1918] 119; *Missouri Pacific R. R. Co.* v. *Wells-Fargo & Co.*, 196 N. Y. Supp. 669; *Doherty* v. *Monroe Eckstein Brewing Co.*, 187 N. Y. Supp. 633; 198 App. Div. 708; *Mawhinney* v. *Milbrook Woolen Mills*, 231 N. Y. 290; *State Realty Co.* v. *Greenfield*, 110 Misc. Rep. 271; *People* v. *Globe Mutual Life Ins. Co.*, 91 N. Y. 174; *Rose* v. *Bristol*, 174 App. Div. 15.) With the declaration of war and the passage of the Trading with the Enemy Act, consideration for the contract failed, and the defendant was under no further obligation to make payments thereunder. (*Crosby* v. *Wood*, 6 N. Y. 369; *Pryor* v. *Flagler*, 13 Misc. Rep. 115; *Scheppey* v. *Stevens*, 177 Fed. Rep, 484.)

*Edwin A. Jones* and *L. Eugene Decker* for respondents. The right to recover the two installments was suspended only and, not being paid to any one else, survived the war with right in plaintiffs to sue. Neither the war nor the Trading with the Enemy Act abrogated or annulled this right or this part or the whole contract. (*Sands* v. *New York Life Ins. Co.,* 50 N. Y. 626; *Cohen* v. *Mutual Life,* 50 N. Y. 610; *Buchanan* v. *Curry,* 19 Johns. 137; *Kannengiesser* v. *Israelowitz,* 107 Misc. Rep. 349; *Erdreich* v. *Zimmerman,* 190 App. Div. 443; *Hughes* v. *Techt,* 188 App. Div. 743; *Streb* v. *C. & P. Nat. Bank,* 108 Misc. Rep. 368; *Mutual Benefit Life Ins. Co.* v. *Hillyard,* 37 N. J. L. 444; *Statham* v. *N. Y. Life Ins. Co.,* 45 Misc. Rep. 581.)

LEHMAN, J. Karl and Eugen Neumond, German citizens, were copartners buying and selling wet and dried brewers' grains and malt sprouts in Germany and the United States. They had a trade-mark, "Goldnes Kalb," which had developed an established value. The defendant, Farmers Feed Company of New York, was engaged in buying and selling like products. A contract made on April 15, 1912, to run till April 15, 1915, was afterwards renewed to continue from April 15, 1915, to April 15, 1918. The question to be determined is the effect upon this contract of the coming of war.

The terms of the contract can be briefly stated. The Neumonds gave the defendant an option expiring April 15, 1918, to buy the trade-mark "Goldnes Kalb" with the good will attached thereto for $25,000, subject, however, to a condition. The condition was that the defendant was not to exercise the option unless the Neumonds during the life of the contract had discontinued and abandoned the business of trafficking in brewers' grains. "Should the parties of the first part not abandon and discontinue the said business during the said period of three years from date hereof, the party of the second part shall have no right or interest whatsoever in and

to the said trade-mark, and the party of the second part shall have no right to exercise the said option, and the said option in such case shall not be available to the said party of the second part." Accompanying the option were certain restrictions upon intermediate activities. The Neumonds agreed that while the contract was in force, they would not buy grains within a stated territory coextensive with the greater part of New York and certain districts in New Jersey. An exception was to be allowed in respect of the output of one brewery, subject, however, to the duty, if advantage was taken of this exception, to compensate the defendant at a designated rate. " In consideration of the option hereby granted to the party of the second part [the defendant] by the parties of the first part and in consideration of the covenants, promises and agreements on the part of the parties of the first part to be performed, the party of the second part promises and agrees to pay to the parties of the first part during the period of three years from the date hereof, at the rate of $2000. per annum payable in equal semiannual installments on the 15th days of October and April during the said period of three years from the date hereof." The defendant also agreed that during the life of the contract it would not buy grains from any person in the State of Texas or from designated persons in Louisiana, Illinois, Wisconsin, Pennsylvania and Maryland.

War broke out on April 6, 1917. The defendant made the payment of $1,000 which fell due a few days later, April 15, 1917. It gave no notice at that time that it had any desire or intention to treat the option as rescinded. It omitted to make payment of the installments payable thereafter, one on October 15, 1917, and the other on April 15, 1918, but still without notice of an intention to rescind. This action is brought to recover the omitted payments. The defense is that the contract fell with the war.

One of the Neumonds (Eugen) resided in Germany. The other (Karl) resided in New York, but soon after the outbreak of hostilities was interned by order of the President. Each of them was an "enemy" with whom trading was prohibited. (Trading with the Enemy Act of October 6, 1917; 40 Stat. 411, §§ 2, 3.) There can be no doubt that the defendant was relieved of the duty of making the semi-annual payments while hostilities continued. The question is whether the duty was not merely suspended, but discharged. Did the obligation of the contract revive with the coming of peace?

The effect of war upon an existing contract between belligerents will vary with the nature of the obligation that is yet to be fulfilled. If the contract has been fully executed by the enemy before the outbreak of hostilities, if all that is left is a unilateral obligation for the payment of a debt, the obligation is suspended. (Williston on Contracts, § 1748; *Birge-Forbes Co.* v. *Heye*, 251 U. S. 317.) The citizen must pay his debt when the war is at an end. On the other hand, if the contract is still executory at the beginning of the war, if there are mutual obligations that are yet to be fulfilled, the contract will be terminated when the essential purpose of the parties would be thwarted by delay, or the business efficacy or value of their bargain materially impaired. (Williston on Contracts, §§ 1749, 1957, 1958, 1978; *Distington H. I. Co., Ltd.,* v. *Possehl & Co.,* 1916, 1 K. B. 811; *Met. Water Bd.* v. *Dick, Kerr & Co.,* 1917, 2 K. B. 1, 21; affd., 1918 A. C. 119; *N. Y. Life Ins. Co.* v. *Statham,* 93 U. S. 24; *Sands* v. *N. Y. Life Ins. Co.,* 50 N. Y. 626; *Cohen* v. *N. Y. Mut. Life Ins. Co.,* 50 N. Y. 610.)

Under the provisions of the contract the defendant's only obligation was to pay stipulated sums of money at stipulated times. The plaintiffs' obligation was to restrict their business in America for a limited period and to sell to the defendant the good will and trade-mark of their business if particular contingency should arise during

the same period. The obligations of the contract on both sides were suspended during the period of the war. At the close of the war the plaintiffs' obligations had expired by their terms. Revival of the obligations of the contract could not create new contractual rights. Covenant on the part of the plaintiffs to restrict their business and to sell its good will and trade-mark during a limited period of time might not be extended without new contract of the parties. May the contractual obligation on the part of the defendant to make the stipulated payments be revived under such circumstances at the close of the war?

It has been said that " the truth is, that the doctrine of the revival of contracts suspended during the war is one based on considerations of equity and justice, and cannot be invoked to revive a contract which it would be unjust or inequitable to revive." (*N. Y. Life Ins. Co.* v. *Statham, supra.*) The consideration for defendant's promise to pay is the plaintiffs' promise to restrict their business and to give an option for the purchase of the good will and trade-marks of the business. It would be inequitable to compel the defendant to make the stipulated payment if suspension of plaintiffs' contractual obligations resulted in failure of the stipulated consideration.

It is said that the defendant was in no worse position at the end of the war than it would have been if war had caused no suspension of the plaintiffs' obligations under the contract. The plaintiffs during the continuance of the war might do no business in America, regardless of contractual obligation; they could, therefore, not do business beyond the limits set by the contract. The contingency upon which the option granted to defendant to buy good will and trade-mark never arose; therefore, even if the plaintiffs' contractual obligation to sell had continued, the defendant could never have availed itself of the option to buy. These circumstances have led the courts below to hold that the defendant must pay the stipulated consideration for the plaintiffs' contractual

obligations though the defendant could not call upon the plaintiffs to perform their obligations.

The value of the plaintiffs' obligations evaporated at the beginning of the war. Abstention by the plaintiffs from doing business beyond the restrictions imposed by the contract was not the result of their contractual obligations. It was imposed by the sovereign power because as enemy aliens the plaintiffs might do no business in the United States. Though the defendant's option to purchase the good will and trade-mark of the plaintiffs' business was only contingent, there was at the beginning of the war a chance that the contingency might arise. The defendant agreed to pay a definite sum to acquire rights based on chance. The right so acquired had substance and potential value so long as the contingency might still arise. Suspension of the plaintiffs' obligations till after they expired effectually terminated the right. Though the contingency had arisen the defendant could not have availed itself of its option. It bought a chance; it did not receive what it bought. The defendant may not be required to pay for a chance it never received; the plaintiffs are not entitled to receive payment for an obligation which was suspended during the time it might have been of value.

Perhaps the defendant would have acted more fairly if it had attempted to give notice of intention to terminate the obligations of the contract. At most, however, that is a circumstance to be considered in weighing conflicting equities. It is a circumstance of no substance when suspension of the contractual obligations itself results in complete failure of consideration and failure to give such notice could have served little if any purpose.

The judgments should, therefore, be reversed and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.