**STRAUSS v. SCHWEIZERISCHE KREDITANSTALT.**

District Court, S. D. New York.
June 20, 1942.

Katz & Sommerich, of New York City, for plaintiff.

Milbank, Tweed & Hope, of New York City, for defendant.

RIFKIND, District Judge.

On defendant's petition this cause was removed from the New York Supreme Court on the ground that the action is one arising under the laws of the United States. Plaintiff now moves to have it remanded. The following facts appear on the face of the complaint: In July, 1939, plaintiff deposited with the defendant, a Swiss corporation, in Zurich, Switzerland, the sum of 192,117.35 Swiss francs, pursuant to the terms of an agreement entered into, at Vienna, Austria, by the plaintiff with one Pichler, a citizen and resident of Germany, as security for plaintiff's performance of that agreement. By that agreement plaintiff was to purchase from Pichler certain equipment over a period of ten years commencing January 1, 1941, for delivery to New York and resale in the United States. On December 11, 1941 and prior to the performance of any part of the agreement by either party thereto, the Congress of the United States duly declared the existence of a state of war between United States and Germany. Pichler is a citizen and resident of Germany and is "an enemy of the United States within the purview and meaning of the Act of Congress known as the Trading With the Enemy Act of October 6, 1917, 40 Stat. 411, as amended, 50 U.S.C.A. Appendix, § 1 et seq.

"That by reason of the fact that said Baltfried Pichler became on December 11, 1941, and still continues to be an enemy of the United States within the purview and meaning of said Act of Congress, any future performance of said writing became and is unlawful within the meaning of said Act known as the 'Trading With the Enemy Act', and the said writing became null and void and of no force and effect and unlawful."

"That by reason of the premises the defendant became indebted to the plaintiff in the sum of 189,728.39 Swiss francs * * *."

The deposit arrangement which is annexed to the complaint discloses that the security fund was subject to withdrawal jointly by plaintiff and a named Viennese bank.

The defendant contends that plaintiff's cause of action depends upon whether the Trading With the Enemy Act vitiates that provision of the deposit arrangement which requires joint action for the disposition of the deposited funds and is, therefore, squarely within the tests laid down to determine the presence of a federal question. First National Bank v. Williams, 1920, 252 U.S. 504, 512, 40 S.Ct. 372, 64 L.Ed. 690; Gully v. First National Bank, 1936, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Cummings v. Chicago, 1903, 188 U.S. 410, 23 S.Ct. 472, 47 L.Ed. 525.

▮▮▮ In Gully v. First National Bank, 299 U.S. at page 113, 57 S.Ct. at page 98, 81 L.Ed. 70, the court said that the controversy with respect to the federal right "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal". The face of the complaint herein seems to disclose such a federal question since it pleads the illegality of further performance of the underlying agreement by virtue of the Trading With the Enemy Act. But the court in the Gully case went further. It said: "Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense".

I take this admonition to be capable of generalization, that not the form but the substance and core of the complaint determine whether "a right or immunity created by the Constitution or laws of the United States" constitutes "an element,

and an essential one, of the plaintiff's cause of action". 299 U.S. at page 112, 57 S.Ct. at page 97, 81 L.Ed. 70.

If the complaint is examined for the basic right which it asserts, we find no more than an ordinary action for money had and received, arising out of the circumstance that the contract, which the deposit was to secure, has been dissolved by the outbreak of war. So stated, I find no right asserted which "will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another", Id. (No one has suggested that because the dissolution of the contract flows from a congressional declaration of war, a federal question is thereby presented).

The complaint is not directed to the enforcement of the deposit agreement; on the contrary, the cause of action is so framed as to by-pass that contractual relationship. It asserts no more than that defendant holds money which properly should be paid to plaintiff because the purpose for which plaintiff delivered it to defendant has been frustrated by the war.

The leading case in the United States on the effect of war upon executory contracts with an enemy is probably Griswold v. Waddington, 1819, 16 Johns. N.Y. 438. There Chancellor Kent said, 16 Johns. at page 488, "It appears to me, that the declaration of war did, of itself, work a dissolution of all commercial partnerships, existing at the time [the war of 1812] between British subjects and American citizens. By dealing with either party, no third person could acquire a legal right against the other, because one alien enemy cannot, in that capacity, make a private contract binding upon the other. This conclusion would seem to be an inevitable result from the new relations created by the war. It is a necessary consequence of the other proposition, that it is unlawful to have communication or trade with an enemy".

▮▮▮ The same view is expressed by the Supreme Court in The William Bagaley, 1866, 5 Wall. 377, 407, 18 L.Ed. 583, in these words: "Executory contracts with an alien enemy, or even with a neutral, if they cannot be performed except in the way of commercial intercourse with the enemy, are ipso facto dissolved by the declaration of war, which operates to that end and for that purpose with a force equivalent to that of an act of Congress".

To the same effect is Hanger v. Abbott, 1867, 6 Wall. 532, 536, 18 L.Ed. 939.

The English cases are in accord on this point. Esposito v. Bowden, 1857, 7 E. & B. 762; Zinc Corporation, Ltd., v. Hirsch, [1916] 1 K.B. 541; Naylor, Benzon & Co. v. Krainische Industrie-Gessellschaft, [19-18] 1 K.B. 311; Hugh Stevenson & Sons, Ltd., v. Aktiengesselschaft, [1916] 1 K.B. 763.

■■ The law of New York has been summarized in Neumond v. Farmers' Feed Co., 1926, 244 N.Y. 202, 206, 155 N.E. 100, 101: "The effect of war upon an existing contract between belligerents will vary with the nature of the obligation that is yet to be fulfilled. If the contract has been fully executed by the enemy before the outbreak of hostilities, if all that is left is a unilateral obligation for the payment of a debt, the obligation is suspended. Williston on Contracts, § 1748; Birge-Forbes Co. v. Heye, 251 U.S. 317, 40 S.Ct. 160, 64 L.Ed. 286. The citizen must pay his debt when the war is at an end. On the other hand, if the contract is still executory at the beginning of the war, if there are mutual obligations that are yet to be fulfilled, the contract will be terminated when the essential purpose of the parties would be thwarted by delay, or the business efficacy or value of their bargain materially impaired. Williston on Contracts, §§ 1749, 1957, 1958, 1978; Distington H. I. Co., Ltd., v. Possehl & Co., 1916, 1 K.B. 811; Met. Water Bd. v. Dick, Kerr & Co., 1917, 2 K.B. 1, 21, affirmed, 1918, A.C. 119; New York Life Ins. Co. v. Statham, 93 U.S. 24, 23 L.Ed. 789; Sands v. New York Life Ins. Co., 50 N.Y. 626, 10 Am.Rep. 535; Cohen v. New York Mut. Life Ins. Co., 50 N.Y. 610, 10 Am.Rep. 522."

See, also, Heidner v. St. Paul & Tacoma Lumber Co., 1923, 124 Wash. 652, 215 P. 1; Hand, The Trading With the Enemy Act, 1919, 19 Col.Law Review 112.

■ The reference to the Trading With the Enemy Act thus adds nothing to the complaint. It is not a necessary allegation. Plaintiff's cause of action does not depend upon it. No federal question is presented.

■ It appears that both plaintiff and defendant are aliens. No jurisdiction is thereby conferred upon the District Court in the absence of a federal question. Doidge v. Cunard S. S. Co., 1 Cir., 1927, 19 F.2d 500.

I conclude that this court is without jurisdiction and that the cause must be remanded to the New York Supreme Court.