**JOHN HANCOCK MUT. LIFE INS. CO. v. UNITED OFFICE & PROFESSIONAL WORKERS OF AMERICA et al.**

**STEPHENS et al. v. JOHN HANCOCK MUT. LIFE INS. CO. et al.**

Nos. C 245, C 496.

United States District Court
D. New Jersey.

Sept. 9, 1950.

McCarter, English & Studer, Newark, N. J., for John Hancock Mut. Life Ins. Co., Nicholas Conover English, of Newark, N. J., of counsel.

Morton Stavis, and Neuburger, Shapiro, Rabinowitz & Boudin, New York City, for United Office & Professional Workers of America, Leonard B. Boudin, New York City, of counsel.

George Pellettieri, of Trenton, N. J., for Richard Kirkham, and others, individual defendants in Case No. C 245.

Henry J. Bender, Jr., of Union City, N. J., for Victor Stephens and others, plaintiffs in Case No. C 496.

David E. Feller, of Washington, D. C., for Congress of Industrial Organizations, amicus curiae.

FORMAN, District Judge.

The first of the above named suits, in the form of an interpleader action, was brought by the John Hancock Mutual Life Insurance Company (hereinafter called Hancock), as plaintiff, originally, in the Superior Court of New Jersey, Chancery Division, Mercer County, against the United Office and Professional Workers of America (hereinafter called UOPWA), a labor union and 20 individual members of the UOPWA, employees of Hancock, as defendants. In the interest of brevity herein-

298

after this will be called the Hancock case. It was removed to this court on the petition of UOPWA, pursuant to Title 28 U.S.C.A. §§ 1441–1450 [1] on March 30, 1950 upon the ground that it was a civil action of which this court has jurisdiction by virtue of §§ 301 and 302 of the Labor Management Relations Act, 1947,[2] 29 U.S.C.A. §§ 185, 186.

Both Hancock, the plaintiff and the individual defendants have moved, pursuant to 28 U.S.C.A. § 1447(c) [3] to remand the action to the State court.

1. 28 U.S.C.A. § 1441 reads in part: "(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. * * * "

2. Commonly called the Taft Hartley Act and hereinafter abbreviated to LMRA. Sections 301 and 302 of said Act hereinafter will be referred to by their corresponding designations in Title 29 of the U.S. Code Annotated, viz., §§ 185 and 186. The pertinent provisions are as follows:

29 U.S.C.A. § 185:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

"(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members. * * * "

3. 28 U.S.C.A. § 1447: "(c) If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs. A certified copy of the order of remand shall be mailed by its clerk to the clerk of the State court. The State court may thereupon proceed with such case."

29 U.S.C.A. § 186:

"(a) It shall be unlawful for any employer to pay or deliver, or to agree to pay or deliver, any money or other thing of value to any representative of any of his employees who are employed in an industry affecting commerce.

"(b) It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value.

"(c) The provisions of this section shall not be applicable * * *; (4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: Provided, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner; * * *.

"(d) Any person who willfully violates any of the provisions of this section shall, upon conviction thereof, be guilty of a misdemeanor and be subject to a fine of not more than $10,000 or to imprisonment for not more than one year, or both.

"(e) The district courts of the United States and the United States courts of the Territories and possessions shall have jurisdiction, for cause shown, and subject to the provisions of section 381 of Title 28 (relating to notice to opposite party) to restrain violations of this section, without regard to the provisions of section 17 of Title 15 and section 52 of this title, and the provisions of sections 101–115 of this title. * * * "

The second is a related suit to the above mentioned Hancock case. It was originally filed in the Superior Court of New Jersey, Chancery Division, Bergen County, by the plaintiffs, Victor Stephens and 12 other employees of Hancock, who make it a defendant in a class action on behalf of all employees of the defendant company who have signed dues deduction authorization cards for a determination that such check-off authorizations are now invalid. This case hereinafter will be called the Stephens case. In conjunction therewith a temporary restraining order was obtained enjoining Hancock from deducting any monies as union dues or assessments out of the wages of industrial insurance agents employed by Hancock and from paying over to the UOPWA any such monies theretofore deducted. These restraints were embodied in a subsequent interlocutory injunction with the modification of permitting Hancock to collect such dues and hold them subject to the jurisdiction of the court.

Subsequent to the injunction an order was obtained by the defendant Hancock on May 24, 1950 adding the UOPWA and two of its officers, as defendants.

On June 6, 1950 the defendant UOPWA, pursuant to 28 U.S.C.A. §§ 1441–1450, filed its petition for removal of this action to this court.

Both defendant Hancock and the plaintiffs, pursuant to 28 U.S.C.A. § 1447(c) have moved to remand the case to the State court.

Both of the above cases are but two in a number of suits in this and other courts, involving the principal parties herein and other employees of Hancock, which arise from the expulsion of the UOPWA from the Congress of Industrial Organizations.

### The Hancock Case.

The complaint in this case alleged that on July 1, 1949 Hancock entered into a bargaining contract with UOPWA, then affiliated with the Congress of Industrial Organizations; that pursuant to the contract a check-off system for the collection of union dues and other fees was in operation, limit-ed to those employees of Hancock who signed irrevocable written authorizations for a period of one year permitting such deductions; and that the named individual defendants, employees of Hancock and members of UOPWA, notwithstanding having signed such irrevocable authorizations, notified Hancock that they were cancelling the said authorizations prior to the expiration of one year. Therefore, because of the notices of cancellation, the conflict with the contract, and the possibility of incurring ciminal penalties prescribed by Congress for deducting dues from employees' wages without their consents, Hancock sought to interplead the UOPWA and these employees and tendered to the court the sum involved, $50, representing the total of the union membership dues of the individual defendants for the month of March 1950.

Paragraph 11 of the complaint quoted portions of the LMRA, particularly § 186 (a), (c) and (d) [4] and concluded: "By reason of the written notices which plaintiff received from the individual defendants expressing their desire to discontinue the deduction of Union dues from their wages, plaintiff is in doubt whether it may safely pay over the sum of $50.00 to the said U.O.P.W.A. on or before April 10, 1950, without incurring the penalties prescribed by Congress, or whether it should return the said sum to the individual defendants, $2.50 to each individual."

The Congress of Industrial Organizations (hereinafter called CIO) was admitted upon motion as an amicus curiae and the argument presented by it has been adopted by the individual defendants.

Both Hancock and the individual defendants in their motion to remand assert that this court lacks jurisdiction because the action does not arise, as the UOPWA contends, under the Constitution or the laws of the United States.

To sustain jurisdiction in this court, UOPWA, argued that the suit was founded on causes arising under 29 U.S.C.A. §§ 185, 186, even though not so expressed in the

---

4. See footnote (2).

complaint, and that the basis which caused Hancock to seek interpleader in the State court was the fear of possible unlawfulness under the LMRA of the check-off payments. In turn, the failure of the company to make provision for dues deductions would be a violation of the collective bargaining agreement and consequently of § 185. Furthermore, it maintained that the complaint being barren of any assertion of right in the individual defendants except that derived from the Act, the assertion of the federal statute was necessary for Hancock to show some color for the several claims (in view of the small sum involved) requiring equitable protection against them. Therefore, since the injunctive relief sought by Hancock would, in effect, restrain a possible alleged violation of a federal statute, jurisdiction was maintainable in this court by the expressed provisions of § 186 (e).

### The Stephens Case.

The complaint alleges that the plaintiffs are 13 industrial life insurance agents employed by Hancock and that they sue on behalf of themselves and as representatives of all agents employed by Hancock who have signed check-off cards; that such agents, numbering approximately 4,200, constitute a class so numerous as to make it impracticable to bring them all before the court and that the action is maintainable under Rule 3:23–1(a) of the Rules Governing the Courts of the State of New Jersey, which relates to class suits where the character of rights to be enforced is joint and common.

The facts precipitating this suit are alleged as follows:

On July 1, 1949 a collective bargaining contract was entered into by Hancock and the UOPWA, then affiliated with the CIO. At that time plaintiffs were members of the union and allege that they accepted membership in the UOPWA principally because of its affiliation with the CIO and did not desire to join an independent and unaffiliated union. Plaintiffs, along with 4,200 other agents, executed check-off cards authorizing the payment of their union dues to the UOPWA, and pursuant to the collective bargaining contract Hancock deducted from the wages of those employees their union dues in the sum of $2.50 per month per employee. Subsequently, the UOPWA was expelled from the CIO, effective March 1, 1950.

The plaintiffs further allege that they and other agents never intended to join an unaffiliated union nor did they ever authorize the appropriation of any portion of their compensation toward the activities of an independent labor organization unaffiliated with the CIO, their assignments reading "to the Secretary-Treasurer of the United Office and Professional Workers of America, CIO.", and that plaintiffs and other agents have signed resolutions or other notifications to Hancock withdrawing their authorizations to it to pay dues to the UOPWA.

It is the contention of the plaintiffs that the consideration for and condition precedent to the execution of the check-off authorizations by the plaintiffs and the other agents was the continued affiliation of UOPWA with the CIO, and that the expulsion of the UOPWA from the CIO has resulted in the failure of such consideration and a breach of such condition and that since March 1, 1950 Hancock had no legal and equitable right to continue dues deductions and transmit dues to UOPWA, unaffiliated.

The plaintiffs, in their prayer for relief,. request that Hancock be permanently restrained from deducting and transmitting monies to UOPWA pursuant to the check-off authorizations and that this court decree, in effect, that such authorizations are now invalid.

In support of the motion to remand, both Hancock and the plaintiffs contend that this action does not arise under any federal law regulating commerce, specifically the LMRA, and that the only question involved is whether the check-off cars are presently valid, which question is a matter of contract law. Hancock also raises the additional ground that the failure of the UOPWA to join all the defendants, including itself, in the petition for removal necessitates that this action be remanded.

To sustain jurisdiction in this court, UOPWA adopts the same basic grounds submitted in the Hancock case, viz.; that the action arises under the laws of the United States, 29 U.S.C.A. § 159(a),[5] 185, 186 and 28 U.S.C.A. § 1337,[6] and urges other related arguments which it developed by reason of the exigencies of differences in parties and circumstances in the Stephens case.

### Discussion.

■ The "frame of reference" on a motion to remand a case to the state court, is contained within the four corners of the complaint, unaided by the answer or petition for removal. Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Woulfe v. Atlantic City Steel Pier Co., 3 Cir., 124 F.2d 322, 324; Driscoll v. Burlington-Bristol Bridge Co., D.C., 82 F.Supp. 975, 977.

In Armstrong v. Alliance Trust Co., 5 Cir., 126 F.2d 164, the court stated this fundamental proposition in the following language:

" * * * the sole basis relied upon to sustain removal jurisdiction is that a federal question is involved. We look solely to the facts set out in the complaint to determine this issue. The federal question necessary to sustain jurisdiction must be an essential element of the plaintiff's cause of action." 126 F.2d at page 166.

"In order to sustain the jurisdiction of the United States District Court on the ground of a federal question in a case removed thereto from a state court, it is not sufficient for the question to be raised in the answer of the defendant or in the petition for removal. The federal question must clearly appear on the face of the declaration or complaint as an essential and integral part of the plaintiff's statement of his own case, not in anticipation of a defense that may be interposed by an adversary party." 126 F.2d at page 167.

While the federal courts must accept litigation *properly* removable to their jurisdiction from the state courts a number of guide posts mark the limits beyond which the federal courts may not pass in permitting that jurisdiction to be extended in removal proceedings. It has been the policy to confine strictly within the powers conferred upon the federal courts their jurisdiction over cases sought to be transferred to them from the courts of the states. As was said in Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–109, 61 S.Ct. 868, 872, 85 L.Ed. 1214: "Not only does the language of the Act of 1887 [Judiciary Act] evidence the Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation. The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. 'Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.' Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L. Ed. 1248; see Kline v. Burke Construction

---

5. 29 U.S.C.A. § 159(a): "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: Provided further, That the bargaining representative has been given opportunity to be present at such adjustment."

6. 28 U.S.C.A. § 1337: "The district court shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

Co., 260 U.S. 226, 233, 234, 43 S.Ct. 79, 82, 67 L.Ed. 226, 24 A.L.R. 1077; Matthews v. Rodgers, 284 U.S. 521, 525, 52 S.Ct. 217, 219, 76 L.Ed. 447; cf. [Town of] Elgin v. Marshall, 106 U.S. 578, 1 S.Ct. 484, 27 L. Ed. 249."

Cf. B. J. Van Ingen & Co. v. Burlington County Bridge Comm., D.C., 83 F.Supp. 778, 787.

■ There is no suggestion that the passage of the new legislation affecting removal proceedings, 28 U.S.C.A. § 1441 et seq., was intended to demolish the structure of that policy or to substantively extend the jurisdiction of the federal courts.[7] It is likewise still the burden of the petitioner for removal to establish his right to remove which must be construed strictly and the petition should not be granted if there is doubt as to the right of removal in the first instance. Reeves v. American Brake Shoe Co., D.C., 74 F.Supp. 897; Stangard Dickerson Corp. v. United Electrical R. & M. W., D.C., 33 F.Supp. 449. Cf. Cox v. Gatliff Coal Co., D.C., 52 F.Supp. 482.

In considering the factor of resolving doubt in favor of remand in the case of Breymann v. Pennsylvania, O. & D. R. Co., 6 Cir., 38 F.2d 209, 212, it was stated: "We are the more persuaded to the above conclusion [that the lower court erred in denying the motion to remand] by the fact that the final determination of the cause may perhaps be expedited by the granting of the motion to remand. No error can be predicated upon such action of the court (28 U.S.C. § 71 [28 U.S.C.A. § 71][8], while, if jurisdiction be retained, error may be prosecuted upon the failure to remand and a final judgment may be reversed on this account. All doubt should therefore be resolved in favor of remand. See Lewis on Removal of Causes, § 292, and the opinion of Mr. Justice Sanford, then District Judge, in Western Union Telegraph Co. v. Louisville & N. R. Co., D.C., 201 F. 932."

This language has particular significance in the cases at bar where the underlying controversy resolves itself into a clash between two labor organizations and expedi-tion of the final determination on the merits of the dispute is of the utmost importance.

We come then to a consideration as to whether the UOPWA has sustained its burden of showing that the complaints allege causes of action over which this court is given jurisdiction directly by the provisions of the LMRA or under the more general provisions of the statute conferring original jurisdiction over civil actions arising under an Act of Congress regulating commerce, 28 U.S.C.A. § 1337.

On the face of the complaint in the Hancock case there is no reference to any right arising out of the federal law as such. However, the plaintiff indicates that it is in danger of finding itself in violation of the provisions of the LMRA interdicting deductions from the wages of an employee without his authorization in writing. The complaint is in the usual interpleader form in which plaintiff alleges that it is confronted with an obligation to do certain acts (make deductions and pay them over to the UOPWA) and at the same time has been served with notice that the written authorizations to perform such acts had been revoked notwithstanding that the authorizations appeared to be irrevocable for a period of one year.

On the face of the complaint in the Stephens case the plaintiffs originally sued only the Hancock Company and again they do not base their cause of action on any federal law or make reference to the LMRA. They simply allege that the consideration for, and condition precedent to the execution of, the authorizations to Hancock to permit deductions from wages had failed because the UOPWA was no longer an affiliate of the CIO and they seek to prevent Hancock from paying over to UOPWA any deductions in their possession or making deductions in the future.

The UOPWA asserts that notwithstanding the language of the complaints their allegations are found in the federal statutes and the suits are cognizable in the federal courts because:

---

7. Cf. Reviser's note, 28 U.S.C.A. § 1441 (c).

8. Now incorporated into 28 U.S.C.A. § 1447.

(1) they grow out of a collective bargaining agreement in the Hancock case in so far as Hancock's right to withhold deductions from wages is concerned, and in the Stephens case the suit arises specifically out of the plaintiffs' rights to wages under a collective bargaining agreement and therefore in effect their complaint is a suit for wages under the agreement however denominated;

(2) in the Hancock case the suit is actually based on a violation of a collective bargaining agreement for the complaint discloses that Hancock does not intend to turn over dues to UOPWA which is in the nature of an anticipatory breach of the collective bargaining agreement and that in any case § 185 contemplates a declaratory judgment action and the complaint of Hancock actually amounts to a complaint in a declaratory judgment action;

(3) both complaints are concerned with check-off provisions of a collective bargaining agreement and Congress through § 186 has regulated check-off proceedings, consequently, a consideration of the check-off and enforcement provisions is required which in turn compels consideration of the federal legislative history of § 186 and that it is peculiarly appropriate that the federal courts determine the construction and application of the law;

(4) although Hancock alleges no affirmative rights under the federal statute, rights or claim of rights in the other parties to the suit arise under the federal statute, and

(5) the Hancock complaint requires a determination of the right of the union to act as the exclusive collective bargaining agent of the employees under § 9(a) of the LMRA, 29 U.S.C.A. § 159(a),[9] since the complaint suggests that the scope of this right of the union may be curtailed or limited by the individual defendants disavowing the collective bargaining agreement and revoking the dues collection cards executed thereunder.

Counsel for the UOPWA submitted that it is "the legal significance of allegations of the complaint rather than nomenclature that determine the jurisdiction of the court"

and that "substance in the form of the complaint controls in removal proceedings." In support of this proposition the cases of Strauss v. Schweizerische Kreditanstalt, D.C., 45 F.Supp. 449 and Kolkin v. Gotham Sportswear, Inc., D.C., 10 F.Supp. 682 are cited. There can be no disagreement with the general statement of this proposition as law but the generalization has its limitations as disclosed upon the examination of these very cases.

In the Kolkin case the complaint in the state court alleged a conspiracy to interfere with business in interstate commerce which was a cause of action under the anti-trust laws of the United States regardless of the fact that those laws were not mentioned in the complaint. It was held that such a cause of action is one in which the United States courts have original jurisdiction. However, the court recognized that the complaint in the state court could have been framed to state a cause of action in the state court, but it did not do so. On the contrary, having stated a cause of action cognizable only in the federal court, the plaintiff was bound thereby and the result was removal and dismissal.

In the Strauss case the court applied the same principle under reversed circumstances. The complaint was on an action for the recovery of money deposited to secure a contract which it alleged was dissolved by the outbreak of war, since one of the parties to the contract was an alien enemy, and any future performance by him would be in violation of the federal statute known as the Trading With the Enemy Act, 50 U.S.C.A.Appendix, § 1 et seq. It was held that the reference to the Trading with the Enemy Act in the complaint and the circumstances set forth therein did not make the cause of action depend upon the federal statute so as to be triable in the federal court. Quite apart from sustaining the position of the UOPWA this case is equally definitive in its declaration that the jurisdiction of the federal court will not be extended upon the basis of a mere reference to a federal statute in the complaint.

**9.** See footnote 5, supra.

■ In analyzing the allegations of the complaint a fundamental not to be ignored is that the party bringing the suit is master to decide what law he will rely on.

In the case of The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716, the court said: "Of course, the party who brings a suit is master to decide what law he will rely upon, and therefore does determine whether he will bring a 'suit arising under' the patent or other law of the United States by his declaration or bill. That question cannot depend upon the answer, and accordingly jurisdiction cannot be conferred by the defense, even when anticipated and replied to in the bill. Devine v. City of Los Angeles, 202 U.S. 313, 334, 26 S.Ct. 652, 50 L.Ed. 1046, 1053."

See also, Bell v. Hood, 327 U.S. 678, 681, 66 S.Ct. 773, 90 L.Ed. 939; Louisville & Nashville R. R. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126.

While the form of the complaints here is such that federal questions are not alleged as the basis for the causes of each action inquiry must be pursued to determine whether nevertheless federal statutes and questions constitute the basis of the actions or whether they are only incidentally related thereto.

■ Basically in both the Hancock and Stephens cases the essential question revolves around the validity of attempted revocations of irrevocable assignments of dues from wages by employees. It is true that the dues deductions followed from the terms of a collective bargaining agreement entered into between Hancock and the UOPWA when the latter was an affiliate of the CIO; that the federal courts have jurisdiction over suits for breach of collective bargaining agreements under § 185; that it is unlawful under § 186 for employers to make deductions from the wages of employees except pursuant to written authorization and that the federal courts have jurisdiction to restrain such a violation, and to enforce punishment therefor criminally,

§ 186(d). Despite implications raised by the federal enactments they are but incidents to the relationships created by the dues deducting authorizations and a construction or application of the federal acts mentioned will be of no avail in determining the basic issues raised by the complaints. These questions may be resolved by resorting to the ordinary contract law in the state wherein the contract was made without resort to any federal law.

■ The primary Congressional purpose in conferring jurisdiction upon the federal district courts in matters arising under §§ 185 and 186 was to insure that all unions should be suable as entities; to make available a forum in which they could be sued, and to prohibit under both civil and criminal sanctions deductions by the employer or the employees' representatives from an employee's wages except under his written authorization which could be irrevocable for a period not to exceed one year. Nothing in the legislative history of § 186[10] which has been brought to our attention discloses any intent upon the part of Congress to preempt the field of litigation arising out of ordinary contractual relationships involving an employer and employee, relating to deductions from wages, as contended by the UOPWA, even though the statute provided certain regulations with regard to check-off agreements. Nor does this case raise as an issue the extent or the interpretation of the proscription of the provisions of the statute as argued by it.

■ An action to determine the status of an "irrevocable authorization" does not take its origin in the laws of the United States. An action of that kind has its genesis and regulation in the laws of the state. See, Andersen v. Bingham & G. Ry. Co., 10 Cir., 169 F.2d 328.

The Supreme Court said in the much cited case of Gully v. First National Bank, 299 U.S. 109, 112–113, 57 S.Ct. 96, 97, 81 L.Ed. 70: "To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be

10. Senate Report No. 105 on S. 1126 (Federal Labor Relations Bill of 1947); House Report No. 245 on HR 3020 (Labor Management Relations Bill of 1947); Shirley-Herman Co. v. International Hod Carriers, etc., 2 Cir., 182 F.2d 806.

an element, and an essential one, of the plaintiff's cause of action. Starin v. City of New York, 115 U.S. 248, 257, 6 S.Ct. 28, 29 L.Ed. 388; First National Bank [of Canton, Pa.] v. Williams, 252 U.S. 504, 512, 40 S.Ct. 372, 374, 64 L.Ed. 690. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. Id.; King County v. Seattle School District [No. 1] 263 U.S. 361, 363, 364, 44 S.Ct. 127, 128, 68 L.Ed. 339. A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto * * *."

In the Hancock case the allegation in the complaint that the inability of Hancock to ascertain the status of the "irrevocable authorization" may result in a course of conduct unlawful under the LMRA merely raised the issue of whether such authorizations are still effective. It follows that if there was an adjudication of effectiveness of the authorizations continued deductions from wages would be no violation of the federal act and the complaint itself does not present any issue or controversy in respect to the validity, construction or effect of the Act. It does not set forth any right or immunity which would be supported if the Act be given one construction or effect and defeated if given another. While the pertinent provisions of the Act lurked in the background as creating duties and proscribing other forms of conduct yet the basic determinations involved require recourse only to the laws of the state. Even without the LMRA such an action may be instituted, for in the circumstances of the instant cases the plaintiffs were not required to resort to the substantive rights created by the LMRA.

In the Stephens case where there is no reference to the federal legislation the issue is drawn around the question of whether the plaintiffs can validly revoke their "ir-revocable authorizations" on the ground that when they were given the UOPWA was affiliated with the CIO and that affiliation ceased in March 1950 which, it is claimed, worked a failure of the consideration for the authorizations. The controversy here, as in the Hancock case, does not hinge on the federal statutes, their construction or interpretation, and poses a question for the state court to decide. See Driscoll v. Burlington-Bristol Bridge Co., supra, and cases cited therein. Cf. Rosecrans v. William S. Lozier, Inc., 8 Cir., 142 F.2d 118, 123.[11]

Even if we assume that the complaints could have been filed by the plaintiffs in the Hancock and Stephens cases in the federal court by way of declaratory judgment actions under 28 U.S.C.A. § 2201 based on violations committed or about to be committed of §§ 185 and 186, it does not follow that the complaints here in question are the equivalents and tantamount to complaints that might have been so filed, as UOPWA contends. See Jewell v. Cleveland Wrecking Co. of Cincinnati, 8 Cir., 111 F.2d 305. The fact is that the causes of action set forth in the complaints actually filed do not rely upon any violations of §§ 185 and 186. These considerations have received treatment in three recent cases. In Abrams v. Hart Cotton Mills, D.C., 85 F.Supp. 664, 667, the court said:

"As the Mill [plaintiff] saw fit to frame its cause of action, the relief demanded may be obtained under the common law of North Carolina without proof of, reference to, or interpretation of any law of the United States or of the United States Constitution. It is not clear that the plaintiff might have framed its cause of action for the relief in view either under the National Labor Relations Act, 29 U.S.C.A. § 151, et seq., and the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq., or under the Sherman Anti-Trust Act, 15 U.S.C.A. § 1 et seq., and the Clayton Anti-Trust

11. There the court said: "* * * no federal law is involved in the making of a contract between two private parties even though the subject matter may be such that the laws of the United States became a part of the contract. That authority to enter into a contract finds its source in some federal law does not necessarily bring a cause of action based upon its breach under federal law."

Act, 15 U.S.C.A. § 12 et seq., but conceding for the argument that the plaintiff might have done so it saw fit to proceed otherwise —that is, by an action under the common law for equitable relief in carrying on its business and protecting its property against the activities of the defendants which are, if as alleged, violative of its property rights irrespective of any and all the statutes which have been passed by Congress to promote the free flow of commerce, to prescribe the legitimate rights of employees and employers in labor disputes, and prohibiting [certain] combinations and conspiracies in restraint of trade or commerce, and also irrespective of any part of or all of the Constitution of the United States.

"It may be, though it has not been made clear to me, that plaintiff could have proceeded under one or more of the federal laws or provisions of the United States Constitution, but I know of no law or rule of law which compelled it to do so. Likewise, I know of no law or rule of law which holds that this Court has jurisdiction simply because it might have had jurisdiction of an action which plaintiff might have begun." [Case remanded.]

In a situation similar to this one in the case of H. N. Thayer Co. v. Binnall, D.C., 82 F.Supp. 566, 569, where removal was sought on the ground that the action arose under the LMRA the court, in granting a motion to remand to the state court, made the following observation: "Plaintiffs in their complaints have nowhere expressly laid claim to any right or remedy given them by any federal law. They contend that their complaints are based solely on alleged unlawful interference with their contractual rights and right to do business as given them by the common law of Massachusetts, and that they ask only the remedy of injunction traditionally available to them under the equity jurisdiction of the courts of that state. A fair interpretation of their bills of complaint shows that that is the only cause of action which they purport to set forth. To construe these bills as stating a cause of action which plaintiffs may have under federal law, but which they have elected not to pursue, would be a tortured interpretation of them which I cannot adopt." 82 F.Supp. at page 569.

In remanding to the state court the case of Zaleski v. Local 401 of the United Electrical Radio and Machine Workers of America, D.C., 91 F.Supp. 552, 553, which presented similar considerations of revocation of authorization of dues deduction following the separation of the union from the CIO, Chief Judge Fake of this court, made the following comment:

"Is the issue so raised cognizable in the United States District Court in the absence of diversity of citizenship? The answer is, No! It is urged, however, that Sections 301–302 of the Labor Management Relations Act of 1947, 29 U.S.C.A. §§ 185, 186, vest jurisdiction. It is my thought that these Sections have no application here since Section 301 restricts actions to suits between an employer and a labor organization or suits between labor organizations; and Section 302 provides against an employer paying over money to any representative of employees, expressly excepting payments of moneys deducted from wages for payment of union dues, an old practice not dependent on statute.

"It is urged that Section 1337, Title 28, U.S.C.A., vests this Court with jurisdiction by the following language:

" 'The District Courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce.'

"This suit is not an action arising on any act of Congress whatever. The authority of employees to make assignments arises at common law, and the permissive language of the statute recognizes that common law right."

Neither the language of these complaints nor the substance of the allegations thereof furnish a basis of right created by federal statute which would justify the removal of the cases to this court from the state tribunals in which they were instituted.

The removal of the Stephens case is challenged on the further ground that the defendant UOPWA alone applied for removal and that the other defendants, Han-

cock and individual officers of UOPWA, did not join in the application. The individuals were officers of the UOPWA and being so designated there could be no practical object in requiring their joining in the application and this technical omission may be overlooked. However, the failure to join Hancock in the application bears more searching inquiry. Generally, all defendants must join in a petition for removal from a state court to a federal court if the removal is sought on the ground that the action arises under the Constitution and laws of the United States. Chicago, Rock Island & Pacific Railway Co. v. Martin, 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055; Driscoll v. Burlington-Bristol Bridge Co., supra, 82 F.Supp. at page 984. UOPWA, however, contends that the general rule does not apply here because Hancock is only a stakeholder or a nominal or formal party in the nature of which joinder is unnecessary. Bailen v. Deitrick, 1 Cir., 84 F.2d 375. We cannot agree that Hancock was a mere passive stakeholder or formal party in the Stephens case. It was committed to perform the positive duty of collecting the dues pursuant to the authorizations as a continuing obligation if judgment were found in favor of the UOPWA. See, Edelstein v. N. Y. Life Ins. Co., D.C., 30 F.Supp. 1; cf. Salem Trust Co. v. Manufacturers Finance Co., 264 U.S. 182, 44 S. Ct. 266, 68 L.Ed. 628, 31 A.L.R. 867.

UOPWA also asserted that it was unnecessary to have Hancock join with it in removing the Stephens case because a realignment of the parties would place Hancock on the side of the individual plaintiffs. It is contended by UOPWA that realignment is warranted by reason of its allegation in its petition for removal made under oath and not rebutted as follows: "This suit was instituted for the purpose of avoiding remittance by the defendant company to the defendant union of the dues to which the said defendant union is entitled under the said collective labor agreement. Upon information and belief it was instituted pursuant to a collusive agreement between the plaintiffs and the defendant company to interfere with the certification, collective bargaining and contract rights of the de-

fendant union; the company (the plaintiff in the other action referred to below) was made a defendant herein, although its interests as aforesaid in avoiding payments to the union and compliance with the contract were those of the plaintiffs, and the UOPWA was deliberately omitted as a party defendant for the purpose of obstructing its protection of its contract, certification and collective bargaining rights." (Paragraph 6.)

It will be observed that this allegation fails to charge that the parties collusively agreed to improper joinder for the purpose of defeating removal. In Updike v. West, 10 Cir., 172 F.2d 663, 665, the court made the following comment concerning elements necessary to be alleged under these circumstances: "A separable controversy of the requisite amount, wholly between citizens of different states, may be removed to the Federal court, notwithstanding the presence of a resident defendant, if it is shown that the resident defendant was made a party for the fraudulent purpose of defeating removal. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 [other cases cited]. But fraudulent joinder, like any other allegation of fraud, must be pleaded with sufficient certainty to justify the conclusion that the joinder was a fraudulent device to prevent removal. A mere allegation of fraudulent joinder is not sufficient. [Commonwealth of] Kentucky v. Powers, 201 U.S. 1, 34, 26 S.Ct. 387, 50 L. Ed. 633, 5 Ann.Cas. 692 [other cases cited]. The pleader is the architect of his own law suit, and the misjoinder of parties or causes of action does not without more amount to a fraudulent joinder. There must be a deductible bad faith purpose to defeat Federal jurisdiction. Alabama Great Southern R. Co. v. Thompson, 200 U.S. 206, 26 S.Ct. 161, 50 L.Ed. 441, 4 Ann.Cas. 1147 [other cases cited]."

Failure of the denial of the allegations contained in paragraph 6 of the petition for removal can only have significance if the charges encompass the element that the parties acted in fraud and collusion to defeat removal. Todd v. Chicago, M. & St. P. Ry. Co., D.C., 291 F. 910. It is clear that the said allegations do not achieve

such purpose, and therefore they are insufficient to excuse the joining of Hancock as is the contention of UOPWA.

Since paragraph 6 of the petition has no bearing as a ground for removal improper alignment of the parties would have significance only as a basis for excusing the failure to join Hancock in the application for removal. Realignment of the parties if it is to be made would necessarily emanate from the complaint in the Stephens case and there is no justification in it to find that the interests of the plaintiffs and Hancock are identical notwithstanding the insinuations raised by UOPWA.

Therefore in the Stephens case the failure to join Hancock in the removal application is an additional reason for remanding that case.

UOPWA has filed a counterclaim in the Hancock case and a counterclaim and cross claim in the Stephens case. It offered an elaborate argument urging that jurisdiction should be assumed over these counter and cross actions independently of whether there is jurisdiction over the complaints. We cannot concur with the theory that the recent amendments to the judicial code governing procedure for removal contemplates the remanding of the complaint and the removal of a counterclaim or cross claim filed thereto as in these cases. To so hold would completely abort the conception that removability is to be tested by the averments contained in the complaint and would enable a defendant to accomplish his purpose of removal by indirection rather than by direction.

The UOPWA has additionally moved that a temporary injunction issued by the state court in the Stephens case restraining payment to it of dues collected by Hancock should be dissolved. The dissolution of the state court injunction was sought whether or not the case was remanded. The point was pressed because of the hardship to which UOPWA is exposed during the months when its income has been cut off by reason of the injunction, and it was asserted that the small number of plaintiffs in the Stephens case could not be representative of the class of workers for which they sought to act because a very large number of the workers had recently signed new authorizations. However, in the light of this decision to remand the cases other means will have to be taken in the state court to expedite definitive action releasing or denying the funds to UOPWA for this court is without jurisdiction to dissolve the injunction of the state court under circumstances of the remand. See, Mayflower Industries v. Thor Corporation, 3 Cir., 184 F.2d 537.

Motions to consolidate the actions and to dismiss the complaints by UOPWA obviously must also be denied in view of this decision to remand.

CIO challenged the jurisdiction of this court upon the ground that 29 U.S.C.A. §§ 185(a), 186 are unconstitutional. In the light of the disposition of the motions herein it is unnecessary to resolve the constitutional question posed by the CIO.

Many briefs containing a large number of points ingeniously buttressed by myriad decisions have been submitted by counsel for the parties to this litigation, particularly the UOPWA. It is impossible to even adumbrate all of the arguments raised without unduly protracting this already overly long opinion. All of the arguments have been considered and endeavor has been made to treat the main stream of them herein.

From the suits instituted here and the many similar actions encountered in other jurisdictions none of which has entered more than its preliminary stage it is evident that the principal parties are jockeying for a forum in which the basic issues may be determined. Without insight as to the strategy that dictates the tactics employed it remains the fact that much time is being lost in arriving at a place where definitive determination of the underlying questions may be arrived at. Individual workers' wishes with regard to financial support of the organizations of their choice are halted in a kind of limbo which should not be. Delay as it is being experienced is inherent in the court proceedings invoked. Perhaps the effective and prompt despatch of litigation which now characterizes the New

Jersey court system may be utilized in promptly prosecuting these cases to conclusions determinative of the important issues raised in them.

Orders for remand of both cases should be submitted.